ERVIN, Justice.
Relator, First Federal Savings and Loan Association of St. Petersburg, Florida, a corporation organized under the laws of the United States in an original proceeding in mandamus in this Court seeks the issuance of a peremptory writ to require the State Comptroller to refund certain intangible taxes paid under protest. We issued an alternative writ and the Respondent Comptroller moved to quash the writ, and also filed his return. The cause is at issue on the merits.
It appears Relator, pursuant to certain instruments referred to as participation agreements or certificates executed by the Security Federal Savings and Loan Association of Atlanta, Georgia, was assigned a three-fourths interest in certain loan obligations secured by first liens on real estate situate in the State of Georgia. For example, on December 27, 1963 said Security Federal Savings and Loan Association, as seller, executed a participation certificate or agreement in favor of Relator wherein the seller transferred and assigned to Relator an undivided three-fourths interest in and to certain obligations, consisting of some eleven securities (promissory notes) totaling $134,219.68, each secured by a mortgage, deed of trust or other lien encumbering real estate situate in the State of Georgia.
The Relator contends that under the Florida Constitution no intangible taxes may be imposed upon its said interest derived by said participation agreements or certificates in such obligations secured by real estate located outside the State of Florida. It paid intangible taxes imposed by the State thereon under protest and seeks refund of the amounts paid in these proceedings.
The following questions appear to be posed by Relator’s contentions:
(1) Does the proviso in Section 1, Article IX of the Florida Constitution, F.S.A., *609 “That as to any obligations secured by mortgage, deed of trust or other lien, the Legislature may prescribe an intangible tax of not more than two (2) mills on the dollar, which shall be payable at the time such mortgage, deed of trust, or other lien is presented for recordation” relate to such mortgages, deeds of trust or other liens as encumber lands located anywhere or is such proviso limited to mortgages, deeds of trust or other liens encumbering lands located in and having their situs within the state of Florida?
(2) Whether there is an intangible personal property tax of one mill on the dollar payable annually on Relator’s interest in obligations secured by liens upon real property located outside the state of Florida where such liens have never been presented for recordation in this state and no effort has been made by Relator to enforce the terms thereof in the courts of this state?
(3) Are the participation interests of the relator under the participation certificates described in the alternative writ of mandamus herein, obligations secured by mortgage, deed of trust or other lien, interest in such mortgage, deed of trust or other lien, or merely an interest in a trust or trust arrangement consisting of obligations secured by mortgage, deed of trust or other obligations and a right to share in obligation interests when paid or when liquidated?
The 1943 Legislature submitted, and the electorate adopted an amendment (HJR 348) to Section 1 of Article IX of the State Constitution. The amendment reduced the maximum millage that could be levied by the Legislature upon intangible property from five mills to two mills and added a proviso that as to obligations secured by mortgages, deeds of trust or other liens an intangible tax of not more than two mills may be imposed thereon payable at the time such liens are presented for rec-ordation.
We do not agree with Relator said proviso applies to its participation agreements or certificates or to its three-fourths interest in the obligations contemplated thereby which are secured by liens upon real estate located in the State of Georgia. The intention of the Legislature which submitted the amendment containing said proviso was that the proviso authorized a single tax imposed only once upon said obligations when the mortgages, deeds of trust or other liens securing them were presented for recordation. The tax was to be collected by our tax officials at the time such lien instruments were presented for rec-ordation in the offices of the clerks of the circuit courts of the several counties in the State of Florida. It was never contemplated that taxing officials in other states would collect and remit such tax to the State Comptroller of the State of Florida at the time such instruments were recorded in such states. In SO Am.Jur., Statutes, § 485, the text states:
“ * * * Thus, the general rule is that no state or nation can, by its laws, directly affect, bind, or operate upon property or persons beyond its territorial jurisdiction. * * *” (text 509)
Furthermore, since the instruments contemplated by the proviso were lien instruments recordable in the public records in the offices of the clerks of the circuit courts in Florida, it necessarily follows they are instruments covering property located in Florida and not in other states. It logically may be said the proviso had reference to that class of lien instruments which are customarily recorded in the public records in order to protect lien rights and interests in such property located in this state pursuant to our statutes which afford public noticp to all concerned. (For example, see F.S. § 28.22, F.S.A.) Conversely, it must be held said proviso does not relate to lien instruments covering property in other states and which are recordable in other states in order to protect lien rights and interests in such property located in other states.
*610 No doubt the purpose of the 194o Legislature submitting said proviso in the amendment was to give a “tax break” to those executing and recording liens in Florida as an incentive to encourage investments having impact in the state. But since the incidence of the tax covered by the proviso is restricted to obligations secured by lien instruments which are recordable in Florida and receive the protection of our public record statutes and may be enforced in our courts, we conclude the classification has a justifiably reasonable basis and does not violate equal protection of laws.
The Relator relies primarily upon Jasper v. Orange Lake Homes, Inc. (Fla.App.2d), 151 So.2d 331, and State ex rel. Collier Land Inv. Corp. v. (Green) Dickinson (Fla.), 188 So.2d 781, in support of its contentions. Neither case appears to support Relator’s cause. The first case merely holds that agreements for deed covering lands in the state are not subject to Class D intangible property taxes. This case leaves the distinct impression that if such agreements for deed are presented for rec-ordation the “one-time tax (Class C) and in lieu of all others” applies. The second case merely holds that agreements for deed covering real estate in this state, while potentially subject to the Class C intangible property tax, are not subject to same until presented for recordation. We denote nothing in said cases which applies to lien obligations secured by pledges of real estate located in other states.
We find that Relator’s participation agreements or certificates or its three-fourths interest in said obligations secured by liens on real estate located in the State of Georgia are subject to intangible personal property taxes. Up until January 1, 1966 when Ch. 65-389 (which completely revised Ch. 199) became effective, Relator’s said intangible personal property was subject to Class D intangible personal property taxes. See §§ 199.02 and 199.11, F.S. 1963, F.S.A. Subsequent to such revision by Ch. 65-389, Relator’s said ‘ intangible personal property is now subject to Class C-2 intangible personal property taxes. See §§ 199.022 and 199.141, F.S. (1965), F.S.A. In other words, the intangible personal property taxes from 1966 forward on Relator’s' said intangible personal property is two mills on the dollar on its assessed valuation payable only once.
The peremptory writ is denied.
THORNAL, C. J., DREW, J., and WAYBRIGHT, Circuit Judge, concur.
CALDWELL, J., agrees to judgment.