208 So.2d 814 (1968)
STATE of Florida, Appellant,
v.
Martin ANDERSEN, Appellee.
STATE of Florida, Appellant,
v.
Martin ANDERSEN, As Trustee for Jeannette Andersen, Appellee.
STATE of Florida, Appellant,
v.
Martin ANDERSEN, As Trustee for Marcia Andersen Murphy, Appellee.
No. 36241.
Supreme Court of Florida.
March 27, 1968.
Rehearing Denied April 30, 1968.
Earl Faircloth, Atty. Gen., Fred M. Burns and Edward D. Cowart, Asst. Attys. Gen., for appellant.
Lawrence E. Dolan, of Akerman, Senterfitt, Eidson, Mesmer & Robbinson, Orlando, for appellee.
ERVIN, Justice.
Martin Andersen, individually and as Trustee for Jeannette Andersen and also as Trustee for Marcia Andersen Murphy, brought suits in the Circuit Court of Orange County, Florida to enjoin the collection of Class D intangible personal property taxes for the year 1966 upon certain promissory notes, as follows:
(1) Fifteen notes of a series executed by the Sentinel Star Company in favor of Martin Andersen, twelve of which are in the principal amount of $584,522.00, each. These twelve mature consecutively, the first on August 31, 1968 and the remaining eleven on August 31st of each year thereafter, *815 i.e., until August 31, 1979. The last three notes are in the principal sums of $800,000; $1,200,000 and $1,507,132, respectively, all maturing on August 31, 1980. Interest on these notes is at the rate of four per cent per annum, except as to the last five notes of the series the interest is increased to five per cent per annum after August 31, 1975. The total of the principal of these fifteen notes is $10,521,396.
(2) Thirteen notes of a series executed by the Sentinel Star Company in favor of Martin Andersen as Trustee for Jeannette Andersen; twelve of which are in the principal amount of $242,179.50 each. These twelve mature consecutively, the first on August 31, 1968 and the remaining eleven on August 31st of each year thereafter, i.e., until August 31, 1979. The thirteenth note is in the principal sum of $1,453,077 and matures August 31, 1980. Interest on these notes is at the rate of four per cent per annum, except as to the last five notes of the series interest is increased to five per cent per annum after August 31, 1975. The total of the principal of these notes is $4,359,231.00.
(3) Thirteen promissory notes of a series executed by the Sentinel Star Company in favor of Martin Andersen, Trustee for Marcia Andersen Murphy; twelve of which are in the principal amount of $121,076.55 each. These twelve mature consecutively, the first on August 31, 1968 and the remaining eleven on August 31st of each year thereafter, i.e., until August 31, 1979. The thirteenth note is in the principal sum of $726,459.30 and matures August 31, 1980. Interest on these notes is at the rate of four per cent per annum, except as to the last five notes of the series interest is increased to five per cent per annum after August 31, 1975. The total of the principal of these notes is $2,179,377.90.
In his suit the plaintiff, Martin Andersen, alleges his promissory notes:
"* * * are in no wise secured by a lien upon real estate and therefore were returned as `Class D intangible personal property,' as that term is defined in Section 199.022 Florida Statutes (1965) * * *. Were these notes classified as C-1 or C-2 intangible personal property, they would be taxed two mills, which tax would be levied only once and would amount to a total of only $21,042.00. But because these fifteen notes are classified as Class D intangibles and are taxed annually at one mill on their just valuation, plaintiff will be required to pay over the next fifteen years a total of $100,668.00. * * *
"5. There is no justification for distinguishing between the obligations represented by plaintiff's unsecured notes and obligations represented by notes secured by a lien on either Florida or out-of-state real property. Therefore, the classifications created by §§ 199.022(3) (a) [Class C-11 (C-1)], 199.022(3) (b) [Class C-2], and 199.022(4) [Class D], are arbitrary and capricious under both the Florida and Federal Constitutions; and to tax plaintiff's notes annually at one mill rather than once at two mills is violative of the uniform and equal provisions of Article IX, Section 1, of the Florida Constitution [F.S.A.] and the equal protection and due process clauses of the Fourteenth Amendment of the Federal Constitution.
"6. Alternatively, the annual one mill tax imposed on plaintiff's Class D obligations is violative of the uniform and equal provision of Article IX, Section 1, of the Florida Constitution because the rate of taxation imposed on Class D obligations is greater than the rates imposed on the obligations recently classified as C-2 by the Legislataure."
Similar allegations appear in the suits of Martin Andersen as Trustee. In the suit relating to Jeannette Andersen it is contended that if the notes involved therein were classed C-1 or C-2 the intangible tax thereon levied only once would total $8,714.00; but classified as Class D intangibles and taxed one mill annually over the next fifteen years the total tax paid would be $41,709.00. In the suit relating to Marcia Andersen *816 Murphy a two mill one time intangible personal property tax levy on the notes involved therein would amount to only $4,357.00, but a one mill intangible tax over the next fifteen years thereon would total $20,851.00.
The Tax Assessor of Orange County, Florida, who was named defendant in the suits, defaulted therein but the Attorney General having appeared in the cases pursuant to authority of statute (see F.S. section 16.01, F.S.A.; State ex rel. Landis v. S.H. Kress & Co., 115 Fla. 189, 155 So. 823; 7 Am.Jur.2d 7 Attorney General § 6.) filed motions to dismiss and answers. On motion of plaintiffs, in which the Attorney General joined, the suits were consolidated. Plaintiffs moved the Circuit Court for judgment on the pleading. The Circuit Court entered its final judgment holding as to plaintiffs' unsecured promissory notes as follows:
"(a) When compared with Class C-2 intangibles, § 199.022(3) (b), Class D intangibles, § 199.022(4), constitute an unreasonable and arbitrary classification; therefore the annual one-mill Class D tax imposed by § 199.141(4) violates the uniform and equal provision of Article IX, Section 1, of the Florida Constitution and the equal protection and due process requirements of Sections 1 and 12 of the Declaration of Rights of the Florida Constitution and of the Fourteenth Amendment of the Federal Constitution.
"(b) When compared with Class C-1 intangibles, § 199.022(3) (a), Class D intangibles constitute an unreasonable and arbitrary classification; therefore, the annual one-mill tax imposed by § 199.141(4) violates the uniform and equal provision of Article IX, Section 1, of the Florida Constitution and the equal protection and due process requirements of Sections 1 and 12 of the Declaration of Rights of the Florida Constitution and of the Fourteenth Amendment of the Federal Constitution.
"(c) Alternatively, even if Class D constitutes a valid classification when compared with Class C-1, the burden of the annual one-mill Class D tax is, without sufficient justification, so much greater in the cases at bar than the burden of the one-time two-mill tax under Class C-1 that it violates the due process requirements of Section 12 of the Declaration of Rights of the Florida Constitution and the Fourteenth Amendment of the Federal Constitution.
"3. Defendant tax assessor and its [sic] successors and privies are hereby permanently enjoined from assessing or in any way attempting to assess or collect the annual one-mill tax prescribed by § 199.141(4) Fla. Stat. (1965) insofar as concerns plaintiffs' unsecured promissory notes identified in the three complaints in these consolidated actions."
The State, through the Attorney General, filed this appeal. We have jurisdiction of the appeal because the Circuit Court held F.S. sections 199.022(4) and 199.141(4), F.S.A., unconstitutional insofar as they attempt to impose Class D intangible personal property taxes upon plaintiffs' unsecured promissory notes.
We disagree with the holding of the Circuit Court and reverse.
Pertinent constitutional and statutory provisions relating to Class D, Class C-1 and Class C-2 are as follows: Section 1, Article IX of the State Constitution provides in part:
"The Legislature shall provide for a uniform and equal rate of taxation, except that it may provide for special rate or rates on intangible property, but such special rate or rates shall not exceed two mills on the dollar of the assessed valuation of such intangible property; provided, that as to any obligations secured by mortgage, deed of trust, or other lien, the Legislature may prescribe an intangible tax of not more than two (2) mills on the dollar, which shall be payable at the time such mortgage, deed of trust, or other lien is presented for recordation, said tax to *817 be in lieu of all other intangible assessments on such obligations. * * *"
F.S. section 199.022, F.S.A., classifies for the purpose of taxation intangible personal property into four classes to be known as classes A, B, C [C-1, C-2] and D intangible personal property. Class A includes money deposited in banks and building, loan and saving associations, and legal tender notes, certificates of deposit, cahsiers and certified checks, drafts and bills of exchange. Class B includes all corporate bonds and stocks, and all obligations dated prior to January 1, 1942 secured by mortgages or other liens upon real or personal estates situated in Florida. Class C includes:
"Class C-1, all notes, bonds, and other obligations bearing date subsequent to December 31, 1941, for payment of money which are secured by mortgage, deed of trust or other liens upon real property situated in Florida; provided that only that part of the value of the mortgage, deed of trust, or other lien, the real property of which is located within the state shall bear to the whole value of the real property described in said obligations shall be included.
"Class C-2, all notes, bonds and other obligations secured by mortgage, deed of trust or other liens on real property; provided that only that part of the value of the mortgage, deed of trust or other lien, the real property of which is located outside the state, shall bear to the whole value of the real property described in said obligation shall be included in this category."
Class D includes all intangible personal property not embraced in classes A, B, C-1 or C-2.
F.S. section 199.141, F.S.A., prescribes the rate or amount of intangible personal property taxes to be imposed upon said classes A, B, C-1 and D, viz.,
(1) On all Class A intangible personal property one tenth of one mill on the dollar of just valuation of such property payable annually.
(2) On all Class B intangible personal property one mill on the dollar of the just valuation payable annually.
(3) On all Class C-1 intangible personal property, two mills on the dollar of just valuation, which valuation shall be the principal amount of the obligation, and shall be payable only once at the time the mortgage, deed of trust or other lien covering real property situated in Florida securing such obligation is presented for recordation in the office of the clerk of the circuit court of the county where the property is situated. The statute provides detailed procedures to insure payment of the two mill tax.
(4) On all Class C-2 intangible personal property,
"* * * two mills on the dollar of the just valuation of such class C-2 intangible personal property. The tax on said C-2 tangible personal property shall be paid only once to the tax collector within thirty days from the acquisition of said class C-2 intangible personal property. The comptroller shall prescribe forms to be used by the tax collector's office in connection with the payment of said class C-2 intangible personal property tax, which said form shall provide the essential information necessary to compute the tax and also for a receipt to be given to the taxpayer upon payment thereof. The tax imposed by this subsection shall be the only intangible tax levied on such notes, bonds and other obligations under this chapter.
"If a note, bond, or other obligation secured by mortgage, deed of trust or other lien is on real property located both within the state and outside the state, full payment of all the intangible personal property tax due under this chapter shall be made at the time of the recording of the instrument, as provided above, for class C-1 intangible personal property."
(5) On all Class D intangible personal property one mill on the dollar of the just valuation payable annually. This latter is *818 the tax the State maintains applies to Appellees' promissory notes.
The portion of paragraph numbered (4) quoted above relating to Class C-2 was inserted into F.S. section 199.141, F.S.A. by the 1965 Legislature by the enactment of Chapter 65-389, which revised Chapter 199, relating to intangible personal property taxation.
Prior to the passage of the revision statute, Chapter 65-389, promissory notes having tax situs in Florida but secured by real estate situated outside the state were Class D intangibles and subject to the one mill intangible personal property tax payable annually. It is apparent that one of the objects of the 1965 Legislature in passing Chapter 65-389 was to treat similarly for intangible personal property taxation all obligations secured by mortgages or other liens irrespective of whether the real properties encumbered by such mortgages or other liens were situate in Florida or outside the state, thereby counteracting the contention that if they remained in separate classes the constitutionality of the tax on those secured by real estate located outside of the state was doubtful. See State ex rel. First Federal Savings and Loan Association of St. Petersburg, Fla. v. Dickinson, Comptroller (Fla.), 193 So.2d 607.
Section 1, Article IX of the State Constitution was amended in 1944 to provide for the single two mill on the dollar tax payable only once upon obligations secured by mortgages, deeds of trust, or other liens. This section, as so amended, was shortly thereafter implemented by legislation insofar as obligations secured by mortgages or liens on real property situated in Florida were concerned. However, not until the enactment of Chapter 65-389 was the same treatment accorded obligations now classed as C-2 intangibles.
The Circuit Court agreed with plaintiffs that obligations not secured by mortgages or other liens encumbering real property in Florida or elsewhere when compared with obligations so secured could not constitutionally be treated differently in classifications for intangible taxes.
For the reasons hereinafter set forth, we think the Legislature justifiably made a distinction between obligations so secured and those not so secured, and that the making of such distinction did not result in violating the constitutional provisions indicated by the Circuit Court.
The Appellees make no showing their unsecured promissory notes are supported by consideration moving to them involving a subject matter or a transaction or real property outside the state. It is obvious these promissory notes were given by the Sentinel Star Company to Appellees in consideration for the sale of a newspaper printing establishment and rights to the publication of certain newspapers in Orlando, Orange County, Florida. In other words, the notes resulted from a Florida transaction.
It is true that one of the foremost reasons for the 1944 constitutional amendment (HJR 348, 1943) treating obligations secured by real estate situate in Florida as a special class for intangible personal property taxation was to give the owners of such obligations a "tax break" and encourage investment in such obligations in Florida. This incentive was primarily intended to encourage mortgage loans for homes, commercial and industrial improvements and agricultural purposes essential to the growth needs of the state. See State ex rel. First Federal Savings and Loan Association of St. Petersburg, Fla. v. Dickinson, supra. However, this was not the only reason. As in other states, it was found by the Florida tax collecting officials that providing for the collection of the two mills intangible personal property tax at the time of recording of mortgages or other liens securing such obligations, facilitated and made it much easier to enforce and collect the tax on such obligations.
It has also been found that such classification of intangibles likewise facilitates collection of intangible taxes upon secured obligations *819 executed outside the state. Our Florida taxing authorities, from fragmentary leads concerning intangible securities owned and brought into the state by new residents and concerning those believed to be owned by Florida citizens, firms, corporations and financial institutions who are known to trade in out of state intangibles, are enabled by reason of the public recording laws of other states to check lien recordings in such states and discover the nature of many intangibles and whether they are taxable in Florida. Many owners of intangibles, knowing the taxing officials have this means of checking, return and pay intangible taxes who otherwise would not do so.
It has been held in certain cases that classifications are valid which overcome practical difficulties in ascertaining taxable intangibles and in facilitating or making easier collection of intangible taxes thereon. For example, in Mutual Benefit Ins. Co. v. Martin, 104 Minn. 179, 116 N.W. 572, at 574, the Minnesota Supreme Court noted that owners of bonds and notes had "not been in the habit of paying their proportionate share of the taxes" due to the "ease with which the existence of such property can be concealed from the tax officials." The Court then pointed out, however, that when a person records his mortgage he exposes his ownership to the tax officials. It said this "practical difficulty alone furnishes a basis for a classification, and justifies the Legislature in devising a special method for the taxation of the subjects of that class." A similar holding appears in Union Trust Co. v. Common Council of City of Detroit, 170 Mich. 692, 137 N.W. 122. There, the separate classification of mortgage credits for taxation purposes was upheld. Classes C-1 and C-2 serve to facilitate and make easier the enforcement and collection of intangibles due to the fact the recording laws of all states operate to identify and disclose secured obligations. Experience has proven that unless the tax is collected once and for all as an incident to or result of the recording of a lien securing an intangible it often will not be collected.
It would hardly seem fitting to strike down as unconstitutional the Class D tax which has been the "catch-all" tax on all intangible personal property not otherwise specifically classified and taxed, since its enactment in Chapter 15,789, Acts of 1931. There is more merit to the suggestion of the Attorney General that if any of the classes of intangibles must be stricken as discriminatory, Class C-2 should be the one since it was the last classification enacted by the Legislature. The "catch-all" Class D tax revenues constitute a very large portion of the total of the state's intangible tax revenue.
The effect of striking down the Class D intangible tax, i.e., one mill on the dollar annually on unsecured obligations, and thereafter taxing them at the rate of two mills only once, as Appellees urge (assuming, of course, we have the power to legislatively recast the intangible tax statute to accomplish such result), is that all such obligations maturing three years or more after date would no longer be subject to intangible taxes. Such modification would create tax differences among all types of unsecure intangibles very difficult to justify.
Many secured obligations have maturities of less than two years' duration; nevertheless, they bear the single two mill intangible tax. It follows that as between Class D on the one hand and Classes C-1 and C-2 there are instances where the tax is greater in the latter classes than in the former, depending upon the nature of the obligation. These instances are the converse of Appellees' contention that Class D intangibles bear the greater tax burden. It is impossible, of course, to provide complete uniformity and exactness in the impact of such intangible taxes due to the great variations in the maturities of taxable obligations.
The Appellees stress the fact that their series of promissory notes extend to 1980 and that if their ownership continues to that year they will have to pay annually an intangible tax of one mill, which over the fifteen-year period will aggregate a much *820 larger sum than if they paid a two mill tax one time only. This is true, but this contention overlooks the fact that there are literally thousands of items of commercial paper evidencing loans of banks maturing in much less than fifteen years which are often renewed, and the renewals are subject to the same one mill annual tax levy. It is easy to make out a case showing an extreme example of the applicability of the Class D tax projected over a period of fifteen years, but when such example is considered in the light of other situations and their variations, the claimed discrimination is not nearly so apparent. It is also quite true that if a note is made to mature at the end of a long period of time  even, say, fifty years  the annual one mill levy thereon if paid throughout will total in the aggregate at the end of the fifty years' period a much greater sum than if the note's maturity date was of short duration. But even with a long-time maturity obligation there is often the possibility of accelerated payment or discount and discharge of the obligation, or change of its state tax situs, thus avoiding the full impact of the tax long before the date of final maturity. It is impossible to avoid differences in the impact of an annual tax upon particular ownerships whether real or personal property or intangibles, depending upon length of ownership of the property taxed and other varying conditions.
The Legislature undoubtedly had in mind that quite frequently the impact of an intangible tax by the terms of the transaction is made to fall upon the maker of an obligation. Therefore the Legislature may have taken into account in the case of a secured promissory note that often the maker agrees to provide enough in the principal of a note to pay the intangible tax on the note while he also has to pay ad valorem tax on his pledged real estate. Quite often our laws, without violating constitutional uniformity and equal protection provisions, do not require two forms of taxation which would have impact upon the same taxpayer. For example, our state has a gallonage tax on gasoline, but bulk gasoline in storage for resale in our state is not subjected to tangible personal property taxes. Similarly, on motor vehicles we pay only annual license taxes and no ad valorem taxes by virtue of a specific provision in the State Constitution (Section 13, Article IX). The Legislature may have reasoned that on mortgage notes mortgagors should not be burdened with the possibility of being required to provide for the payment of the highest rate of intangible taxes thereon while having at the same time to pay ad valorem taxes on their mortgaged property.
That tax burdens may be unequal is generally accepted. Dane v. Jackson, 256 U.S. 589, 599, 41 S.Ct. 566, 65 L.Ed. 1107. Equal protection does not require identity of treatment. It only requires that the distinction have some relevance to the purpose for which the classification is made, and that the different treatments be not so disparate as to be wholly arbitrary. See Walters v. City of St. Louis, 347 U.S. 231, text 237, 74 S.Ct. 505, 98 L.Ed. 660. The prohibition against denial of equal protection was not intended
"* * * `to compel the states to adopt an iron rule of equal taxation' nor `to prevent a state from adjusting its system of taxation in all proper and reasonable ways.' * * * The classification may be limited as to objects * * * if all persons subject to it are treated alike under like circumstances and conditions. * * *
"* * * `but logical appropriateness of the inclusion or exclusion of objects or persons is not required. A classification may not be merely arbitrary, but necessarily there must be great freedom of discretion, even though it results in "ill-advised, unequal, and oppressive legislation."' * * *"
Louis K. Liggett Company v. Amos, 104 Fla. 609, 141 So. 153, text 156 and 157. See 51 Am.Jur. Taxation § 152, p. 202.
*821 In Green v. Walter (Fla.), 161 So.2d 830, text 833, we said
"We are aware of no legal bar to taxation of intangible property in a category separate and apart from the taxation of other property so long as the classification is not arbitrary or unreasonable and when all under like conditions are treated the same."
It is noted from F.S. section 199.022(3), F.S.A., that as to both Class C-1 and Class C-2 "only that part of the value of the mortgage, deed of trust, or other lien, the real property of which is located" either within or without the state shall be included in said categories in the proportion such value "bears to the whole value of the real property described in said obligations." This language negatives the argument that regardless of how small the value of the real estate pledged to secure an obligation may be in proportion to the principal amount of the obligation, nevertheless only the Class C-1 or Class C-2 tax is payable thereon. To the contrary, where the value of the real estate pledged to secure the obligation neither equals nor exceeds the principal amount of the obligation, the amount representing the deficit is subject to Class D intangible tax. The language just quoted makes it clear that the Class C-1 and C-2 taxes only apply to the extent an obligation is genuinely secured in terms of value by a pledge of real estate.
Our Constitution itself, in the proviso in Section 1, Article IX, makes a distinction between secured and unsecured intangibles, and specifically authorizes the Legislature to prescribe special rates of taxation on particular intangibles. We believe this is a real and not an arbitrary distinction between such intangibles. We do not believe the Legislature was prohibited from removing the distinction between intangible obligations secured by pledges of real estate situate in Florida and those secured by pledges of real estate situated outside the state and thus eliminate doubts as to the constitutionality of such distinction. Nor do we believe such removal of the latter distinction immediately created an unequal classification with unsecured intangibles (Class D) for the reasons hereinbefore stated.
For the foregoing reasons we reverse the final decree and direct that the complaints in the three suits be dismissed.
Reversed.
CALDWELL, C.J., THOMAS, ROBERTS and DREW, JJ., SPECTOR, District Court Judge, and WHITE, Circuit Judge (Retired), concur.