THORNAL, Justice.
By an original proceeding in mandamus, the relator seeks a refund of intangible personal property taxes previously paid under protest.
We must decide whether property acquired by a taxpayer prior to 1966, is subject to the so-called Class C-2 foreign intangible personal property tax as defined in Fla.Stat. § 199.022(3) (b) (1965) and § 199.141(3) (e) (1965), F.S.A.
The relator, Independent Life and Accident Insurance Company, is a Florida insurance corporation. The respondent Dickinson is the Comptroller of the State of Florida. Mr. Dickinson is the State officer charged by law to make refunds of money paid for intangible personal property taxes when such refunds are due. The parties have stipulated to the material facts.
On and prior to January 1, 1966, the relator owned certain intangible personal property secured by mortgages and other liens on real estate located outside the State of Florida. The intangibles had a value of $48,198,276.77. They had been acquired from time to time over a period of many years prior to January 1, 1966. The Duval County Tax Collector assessed a tax in the amount of $96,396.55 against the intangibles and demanded payment. He imposed the tax on the property as Class C-2 foreign intangible personal property under *294 the statutes hereafter quoted. The tax was computed at the rate of 2 mills on the dollar of the value of such property without discount. The relator paid the tax under protest in the month of October, 1966. It thereupon made demand for a refund which the respondent Comptroller promptly denied. In this mandamus proceeding the relator seeks a refund of the total amount paid. Alternatively, in the event that we should find the tax to be due, relator seeks the statutory 4% discount for payment prior to November 30, of the tax year. With his return the respondent has moved to quash the alternative writ. The facts having been stipulated, we dispose of the matter on the merits.
Chapter 65-389, Laws of Florida, 1965, rewrote Florida Statutes Chapter 199, F.S.A., Intangible Personal Property Taxation, effective January 1, 1966. This act redefined the classes of intangible personal property and created a new category, Class-2, defined as follows:
“199.022 Classes of intangible personal property * * *
“(3) Class C intangible personal property shall include:
“(a) Class C-l * * *.
“(b) Class C-2, all notes, bonds and other obligations secured by mortgage, deed of trust or other liens on real property; provided that only that part of the value of the mortgage, deed of trust or other lien, the real property of which is located outside the state, shall bear to the whole value of the real property described in said obligation shall be included in this category.” [Emphasis added.]
Taxes are levied as follows:
“199.141 Annual levy. — On and after January 1, 1942, there is hereby annually levied and assessed on all intangible personal property, to be assessed and collected as other taxes are assessed and collected and to be paid into the intangible tax fund of the state and apportioned therefrom as hereinafter set forth, the following tax: * * *.
“(3) * * * (e) On all Class C-2 intangible personal property, two mills on the dollar of the just valuation of such class C-2 intangible personal property. The tax on said C-2 intangible personal property shall be paid to the tax collector within thirty days from the acquisition of said class C-2 intangible personal property. The comptroller shall prescribe forms to be used by the tax collector’s office in connection with the payment of said class C-2 intangible personal property tax, which said form shall provide the essential information necessary to compute the tax and also for a receipt to be given to the tax payer upon payment thereof. The tax imposed by this subsection shall be the only intangible tax levied on such notes, bonds and other obligations under this chapter. [Emphasis added.]
“If a note, bond, or other obligation secured by mortgage, deed of trust or other lien is on real property located both within the state and outside the state, full payment of all the intangible personal property tax due under this chapter shall be made at the time of the recording of the instrument, as provided above, for class C-l intangible personal property.”
The validity of the 1965 law is not questioned. Our recent decision in State v. Andersen, Fla., 208 So.2d 814, opinion filed March 27, 1968, upheld the validity of the Legislature’s definitions of Classes C-l, C-2 and D, as categorized by Fla.Stat. § 199.022(3) (4) (1965), F.S.A. The instant case simply deals with the construction of Class C-2 intangible personal property as defined by the 1965 law. There have been no reported court decisions on the point since the law’s inception.
In State ex rel. First Federal Savings and Loan Association of St. Petersburg, Florida v. Fred O. Dickinson, Jr., 193 So. 2d 607 (Fla.1966), we held that intangible *295 personal property such as that now described as Class C-2 was properly taxed prior to January 1, 1966, as Class D intangible personal property. It was thereby subject to an annual tax of one mill. By way of dictum, this Court said:
“The intangible personal property taxes from 1966 forward on Relator’s said intangible personal property is two mills on the dollar on its assessed valuation payable only once.”
This statement correctly recognizes the legislative intention that the new tax on Class C-2 intangible personal property should be payable only once. In that case the Court did not consider how the new tax should be applied from 1966 forward with reference to previously owned intangible properties as distinguished from newly acquired intangible properties. Consequently, we are here confronted with the necessity of an initial construction of the 1965 law. We should interpolate that we are not here concerned with Chapter 67-583, Laws of Florida, 1967, which apparently purports to clarify the date of accrual of the Class C-2 tax.
The respondent, Comptroller, relies on an opinion of the Attorney General dated March 18, 1966, numbered 066-25. The conclusions of that opinion are adverse to the claims of the relator. We are compelled to disagree with the Attorney General. In so doing we must grant the relief sought by the relator.
In the first place, the taxing statute itself § 199.141(3) (e), provides that the tax shall be paid “within thirty days from the acquisition of said C-2 intangible personal property.” Since the statute became effective January 1, 1966, it obviously was not intended to apply to property otherwise within the class which was acquired more than thirty days prior to its effective date.
The last-cited subsection also provided that the tax thereby imposed “shall be the only intangible tax levied on such notes, bonds and other obligations under this chapter.” It so happens that in 1965 and other years prior to 1966, the newly defined Class C-2 intangibles were included within the then definition of Class D intangibles and were taxed accordingly. State ex rel. First Federal Savings and Loan Association of St. Petersburg, Florida v. Dickinson, supra. Consequently, each of relator’s liens encumbering non-Florida property which had been owned as much as one year prior to January 1, 1966, had already been taxed as Class D intangible property. There is no indication whatsoever that the Legislature intended to attempt to double-tax this property. Conversely, the contrary is apparent from the quoted language of the Act.
We conclude that since, (1) the tax is expressly made payable within thirty days from “the acquisition” of Class C-2 property, and, (2) since prior to 1966 this type of property paid the Class D tax and double taxation is expressly excluded by the Act, the result must be that the 1966 tax is not collectible against the property described in the petition.
We think that there is no doubt as to the correctness of this construction of the statute. However, if the statute were unclear or dubious in its applicability, it must be construed most liberally in favor of the taxpayer. This is a cardinal rule which would lead us to the same conclusion as we otherwise reach. Overstreet v. Ty-Tan, Inc., 48 So.2d 158, 160 (Fla.1950).
As noted above, the problem is not' likely to arise in the future because of the 1967 amendments to the statute. Chapter 67-583, supra.
The conclusion which we reach makes it unnecessary to consider the relator’s claimed entitlement to the statutory 4% discount for early payment.
The peremptory writ shall issue and the respondent is directed to refund to the re *296 lator the amount claimed in the petition, to wit: $96,396.55.
It is so ordered.
CALDWELL, C. J., ROBERTS and ADAMS, JJ., and SPECTOR, District Court Judge, concur.