QUESTIONS: 1. Does the Department of Revenue have the authority to back assess for the nonrecurring 2-mill tax? 2. Is the authority to back assess for the nonrecurring 2-mill tax limited by any time period contained in s. 199.232(4), F.S., or elsewhere? 3. Is an obligation secured by a lien on a leasehold interest in government lands which was executed and recorded more than 3 years ago subject to taxation under either s. 199.042(2) or s. 199.052(7)(c), F.S., if enforcement is sought at a later date? 4. What measure of tax, if any, is to be imposed on those instruments which were executed and recorded prior to December 31, 1971, the effective date of Ch. 71-133, Laws of Florida, of which s.196.001(2), F.S., was a part if no time period allowed for back assessment is applicable?
SUMMARY: The Department of Revenue has the authority to back assess for the nonrecurring 2-mill tax. Such authority is limited to the time period for which taxpayers are required to maintain books and records provided for in s. 199.232(6), F.S., and the period during which an investigation may be made provided for in s. 199.232(7), F.S. The nonrecurring 2-mill tax under s. 199.042(2), F.S., is due and payable only when such instrument is recorded or sought to be enforced. The tax is ambulatory in nature and the happening of either of the two "triggering events" would render the tax due and payable. Prior to December 31, 1971, such obligations secured by a lien on a leasehold interest in government lands were subject to an annual intangible tax, but since that date, as recognized in AGO 074-350A, such intangibles are subject to the nonrecurring 2-mill tax. The Florida Supreme Court recognized a legal distinction in the nonrecurring 2-mill tax provided for in s. 199.042(2), F.S., and the nonrecurring 2-mill tax provided for in s. 199.052(7), F.S. STATEMENT OF FACTS: The problem you refer to in your inquiry is likewise affected by the recent Supreme Court decision of State of Florida ex rel. Four- Fifty Two-Thirty Corp. v. Dickinson et al., Case No. 46,200, opinion filed July 9, 1975, which is presently being considered on petition for rehearing. In your letter, after referring to AGO 074-350A, you state: In that opinion, you held that obligations secured by liens on leasehold interests in government lands, classified as real property for Ad Valorem tax purposes by Florida Statutes, Section 196.001(2), were assessable for intangible tax purposes at the nonrecurring two mill levy imposed by Florida Statutes, Section 199.032(2). Prior to the rendition of this opinion, the Department of Revenue and most clerks of the circuit courts, upon whom the duty is imposed to collect the nonrecurring two mill tax, had taken the view that such instruments were not subject to the nonrecurring two mill tax, but were rather subject to the annual one mill tax imposed by Florida Statutes, Section 199.032(1) and its predecessors. Accordingly, most such instruments which were recorded prior to the rendition of Attorney General's Opinion 074-350A did not have the nonrecurring two mill tax paid at the time of their recordation. The Department of Revenue now proposes to assess all such instruments with the nonrecurring two mill tax which it is appropriate for it to assess. You further advise in your letter that "In the past, the Department of Revenue has taken the position pursuant to the provisions of Sections 199.042(2) and 199.052(7)(c), F.S., that the non-recurring two mill levy was due and payable on any of three events, those being the recordation of the security instrument, the execution of the instruments in question, and on the date of enforecment." Your questions require an examination and analysis of involved provisions of Ch. 199, F.S., and the previously referred to Four- Fifty Two-Thirty Corp. case in light of the nature of the nonrecurring 2-mill tax imposed under s. 199.032(2), made due and payable as provided for in ss. 199.042(2) and 199.052(7)(a), as distinguished from the annual tax imposed elsewhere in Ch. 199. Annual returns are required to be filed under s. 199.042, which requirement is not necessary for the nonrecurring 2-mill tax imposed. The reason for the requirement of annual returns for those intangibles other than those assessed with the nonrecurring 2-mill tax is that the nonrecurring 2-mill tax is allowed to be collected only once, while the annual intangible tax is collectible yearly. In this regard see State ex rel. Collier Land Investment Corp. v. Dickinson, 188 So.2d 781; State ex rel. First Federal Savings and Loan Association of St. Petersburg v. Dickinson, 193 So.2d 607; State ex rel. United States Sugar Corp. v. Gay, 46 So.2d 165; and State ex rel. Seaboard Air Line R. Co. v. Gay, 35 So.2d 403. The recent case of State of Florida ex rel. Four-Fifty Two-Thirty Corp. v. Dickinson et al., supra, recognized the distinction between ss. 199.042(2) and 199.052(7)(a), F.S., in the footnote in the dissent as follows: The problem of escaping or postponing the tax would not exist if the legislature had used comparable language for "liens" in Sections 199.042(2) and 199.052(7)(a), Fla. Stat. The difference in wording in those sections must be assumed to be purposeful, however, and there is simply no "written specific lien in the nature of a mortgage" in these agreements to allow the imposition of tax at the time of execution. See Section 679.02, Fla. Stat., directing that a mortgage shall be a "specific lien" on property. You will note that s. 199.042(2) uses the language "or other lien upon real property," while s. 199.052(7)(a) uses the language "or other written specific lien in the nature of a mortgage upon real property." The tax under s. 199.042(2), would become "due and payable" only when the instrument was recorded or when the instrument was sought to be enforced. This due and payable language is ambulatory in nature. The tax would be due when the instrument was recorded, but if not recorded at the time of execution or thereafter, no tax would be due and payable until such time as the instrument was sought to be enforced. Thus, if neither recordation nor enforcement were ever sought, no tax would be due and payable on intangibles secured by some "other lien" upon real property situated in the state. However, if any such instruments were recorded at any time in the future, or sought to be enforced at any time in the future, the tax would as of that moment become due and payable. This would not be back assessment, but would be merely collecting a tax which had properly become due and payable. However, if such instrument covered by s. 199.042(2) were recorded since December 31, 1971, upon which the full 2 mills has not been received at that time or since then, the department's back assessment powers as discussed later herein would be applicable. Comparing the language in s. 199.052(7)(a), F.S., to the language in s. 199.042(2), supra, it is readily apparent that some overlapping occurs. Both apply to notes, bonds, and other obligations for the payment of money which are secured by mortgage or deed of trust. However, only s. 199.052(7)(a) contains the language "or other written specific lien in the nature of a mortgage" as distinguished from "other lien." Thus, it would follow that those intangibles secured by mortgage or deed of trust would be taxable both as provided for in s. 199.042(2) and s. 199.052(7)(a). Statutory differences in the use of the language "other lien" and "other written specific lien in the nature of a mortgage" are noted in s. 199.052(7)(b), (c), and (d), F.S. Thus, any departmental back assessing must be done in recognition of the difference in ss. 199.042(2) and 199.052(7)(a) as noted in the Four-Fifty Two-Thirty Corp. case, supra. From here forward this opinion is addressed solely to the nonrecurring 2-mill tax imposed under s. 199.042(2). The observation herein pointing out that the tax imposed under s. 199.042(2), F.S., being due and payable when the instrument is recorded or sought to be enforced, is ambulatory in nature, answers your question number 3. That is, the due date of the tax would be either when recorded or when sought to be enforced. The ambulatory nature of the tax as being due and payable either when recorded or when sought to be enforced is recognized in the case of State ex rel. United States Sugar Corporation v. Gay, 46 So.2d 165, wherein it is stated at p. 168: Let us look, then, at the "practical operation" of the tax here in question, in the light of the above decisions. It is a matter of common knowledge, of which this court can take judicial notice, that the Class C tax is exacted by our tax gatherers only at the time the mortgage, or other security, is presented for recordation, or for enforcement in our courts; and that, once this tax has been collected on a particular secured obligation, no further annual tax is collected by the tax collectors of this state on such obligation. This has been the long-prevailing construction of Section 199.11(3), supra, by the Comptroller of the State of Florida, of which this court may also take judicial notice. Bloxham v. Consumers' Electric Light Street R. Co.,36 Fla. 519, 18 So. 444, 29 L.R.A. 507, 51 Am.St.Rep. 44. (Emphasis supplied.) Continuing therein the court stated: It may be seen, therefore, that in its practical operation, the Class C tax is exacted only if the owner of the secured obligation elects to record his security or to enforce it in our courts. (Emphasis supplied.) Also see State v. Dickinson, 188 So.2d 781 (Fla. 1966) to same effect, but holding that under former Art. IX, s. 1, State Const. 1885, the tax was payable only upon recordation rather than upon execution. If the instrument was recorded prior to December 31, 1971, the tax due on obligations secured by a lien on leasehold interests in government lands would have been the annual tax which had been due yearly until December 31, 1971. However, if recorded since December 31, 1971, and assuming that a tax of 1 mill was paid, an additional 1 mill would be due and payable, insofar as the specific intangibles secured by "other lien" under s. 199.042(2), F.S., are concerned, which could be collected when the instrument was "sought to be enforced." If never sought to be enforced, then no additional intangible tax would be due and payable. This final observation presupposes that the initial recordation and payment of the 1-mill tax occurred beyond the 3-year statute of limitations to be discussed next herein. If such recordation and payment were within such 3-year period, then the full amount of the tax due and owing would not have been paid, and, accordingly, back assessment and collection would be appropriate. Of course, if the taxpayer had paid an annual tax beginning January 1, 1972, and for each year thereafter, then the taxpayer would have paid too much tax since the total amount of tax due on such intangibles would be 2 mills, and a refund would be in order provided ss. 199.252 and 215.26, F.S., were complied with. Attorney General Opinion 074-350A takes the view that the effect of Ch. 71-133, supra, which became effective December 31, 1971, was to change the type intangible tax (on obligations secured by a lien on leasehold interests in government lands) involved herein from an annual tax to a nonrecurring 2-mill tax. Accordingly, taxes paid on such intangibles prior to December 31, 1971, would have been properly paid as annual intangible taxes, and no additional annual tax would be due and payable on such intangibles. Whether recorded or not recorded prior to December 31, 1971, is actually immaterial because the taxable status of the intangible became fixed on December 31, 1971, so that thereafter the nonrecurring 2-mill tax would be applicable instead of the annual tax. And the nonrecurring 2-mill tax on the enumerated intangibles under s. 199.042(2), F.S., becomes due and payable on recordation or enforcement. If recorded since that date, the 2-mill tax would be due and payable and likewise, if sought to be enforced, the 2-mill tax would be due. Payment of the 2-mill tax since December 31, 1971, on recordation would, of course, mean that no additional 2-mill tax would have to be collected on enforcement, but neither recordation nor payment of the annual tax prior to December 31, 1971, would affect the imposition of the nonrecurring 2-mill tax after December 31, 1971. For example, assume the instrument was executed and recorded during 1966 and for each year thereafter the annual tax was paid. Thus, through 1971 the intangible would have been taxed a total of 6 mills. Since AGO 074-350A dictates that such intangible must now be taxed only once at the nonrecurring 2-mill rate after December 31, 1971, no further annual tax could be collected, but the prior payment of the annual tax would not offset the future nonrecurring tax. Next assume that such intangibles were executed and came into existence during 1966 but were never recorded. The same annual tax would have been required to be paid whether recorded or not. Thus, it is readily apparent that recordation prior to December 31, 1971, is immaterial insofar as tax imposition is concerned, except that prior recordation would eliminate one of the "triggering" events which renders the nonrecurring 2-mill tax due and payable. The same would be true of execution prior to December 31, 1971, of an intangible covered by s. 199.052(7)(a), F.S. Prior existence would be immaterial since the tax thereunder is due and payable on recordation or execution and since the tax liability is imposed on persons who take, receive, or record such intangibles. This is in the disjunctive and the happening of any such event would "trigger" the tax imposition. The ambulatory nature of the nonrecurring 2-mill tax is recognized in various cases. These observations answer questions 3 and 4. Questions 1 and 2 will now be considered. Section 199.232(1), F.S., provides in part: The department shall ascertain by diligent search and inquiry whether all persons as defined in this chapter have made proper returns and whether all intangible personal property subject to taxation has been assessed. If the department discovers that any intangible personal property has for any reason escaped taxation or has been undervalued, it shall assess the same separately for each year that the property may have escaped taxation or has been undervalued, and the tax and penalties shall be levied and collected by the department. (Emphasis supplied.) This section clearly embraces any intangible property and accordingly would embrace intangibles subject to annual taxation and intangibles subject to the nonrecurring 2-mill tax. The first sentence of the section requires the department to ascertain if all persons have made proper returns, which could apply only to those persons required to make returns, and to ascertain if all intangible personal property has been properly assessed. The latter use of the word "all" would clearly include both intangibles subject to annual taxation and intangibles subject to the nonrecurring 2-mill tax. The language mandating the department to assess such discovered intangible property separately for each year would likewise apply to both types of intangibles. Those subject to annual assessment would be assessed for every year they had either been undervalued or escaped taxation, and those subject to the nonrecurring assessment would be assessed in only one year. It is noted that s. 199.232(1), F.S., contains no period of limitation on the department's power to back assess, and, accordingly, other provisions of the chapter must be examined to determine if the back assessment power is limited elsewhere. Section 199.232(2), F.S., relates only to those intangibles subject to annual assessment for which returns are required. The language, "any intangible personal property," used in the third sentence of the section, is limited in application to the preceding language in the sentence, "on receipt of such returns." The final sentence contains the final step in the process, after receiving the referred-to returns, such final step being the assessing of any such omitted or undervalued property. Section 199.232(3), F.S., also deals with returns and the examination of returns by the department and does not apply to the nonrecurring 2-mill tax. Section 199.232(4), (6), and (7), F.S., contains provisions limiting the department's power to back assess. The period of 3 years is mentioned specifically in s. 199.232(4) and (6), and indirectly in s.199.232(6) and (7) through reference to the refund period which is 3 years as per ss. 199.252 and 215.26, F.S. (See State v. Gay,40 So.2d 225.) Thus we must determine if any of the above limitations are applicable to the nonrecurring 2-mill tax. The subject of back assessing is discussed in 84 C.J.S. Taxation s. 508 beginning at p. 957. Therein it is pointed out that in the absence of a statute providing for the addition of property which had either been omitted or had for some reason escaped taxation, the assessors have been held to be without authority to make such an addition. "Omitted property" is discussed therein at p. 959 wherein it is pointed out that "omitted property" did not include property which had been once assessed even though the assessor may have erred in respect to the quantity, quality or value. At p. 961 therein it is pointed out that the Legislature may fix the time limit on back assessments by allowing the assessor to add property for a given number of years. Florida recognizes and follows these basic principles. See Florida National Bank of Jacksonville v. Simpson,59 So.2d 751; Okeelanta Sugar Refinery, Inc. v. Edgar W. Maxwell,183 So.2d 567; City of Naples v. Conboy, 182 So.2d 412; International Brotherhood of E. Workers v. Parks, 9 So.2d 378; City of Coral Gables et al. v. Fluvia Corporation, 185 So. 621; Illinois Grain Corporation v. Schleman, Fla., 144 So.2d 329; Wade v. Murrhee, 78 So. 536; and State v. Beadsley, 94 So. 660. Accordingly, Ch. 199, supra, must be examined to determine if legislative authorization for back assessment has been granted therein and, if it has been so granted, whether or not there is a time period or restriction on the department's back assessment powers. As previously pointed out herein, s. 199.232 does authorize the department to back assess for intangible personal property which has either escaped taxation or been undervalued. But s. 199.232(4) restricts this back assessment power as provided for therein. There is also a requirement in s. 199.232(6), F.S., for taxpayers under Ch. 199 to keep and preserve suitable records. Said provision makes it the duty of every person required to make a return and pay tax to keep proper records. This sentence imposes the requirement on "every person required to make a return" and "every person required to . . . pay tax." The section continues by providing: It shall be the further duty of every such person so charged to keep and preserve, for the same three-year period in which a refund would be allowed or the same three-year period as prescribed herein for the time an assessment may be made by the department, all such records as may be required by the department for the reasonable administration of this chapter; and all such records shall be open to examination at all reasonable hours by the department or any of its duly authorized agents. (Emphasis supplied.) This requirement and the language therein is consistent with s. 199.232(4), F.S., which contains the prohibition or restriction on the department's back assessment power, and with s.199.232(7), F.S., which authorizes the department to make an investigation against a person for any year in which that person's right to refund is available. The case of Davis v. Ponte Vedra Club, 78 So.2d 858, considered s. 212.13(2), F.S., which required taxpayers to keep for a period of 2 years (now 3 years) a complete record of tangible personal property received, used or sold at retail in this state. At p. 860 the court states: The Act requires that the records be kept only for a period of two years and this provision is binding as well on the Comptroller as it is on the buyer so that he is likewise limited in the collection of the tax to such two year period. (Emphasis supplied.) Similarly, the requirement that all intangible taxpayers maintain books and records would restrict the department's back assessment powers as provided for therein. Section 199.232(4), F.S., authorizes the department to audit or inspect the books, records, or documents of persons and to correct by credit or refund any overpayment of tax and in the event of a deficiency an assessment of such deficiency shall be made and collected. The final sentence of said section provides: No assessment shall be made, except pursuant to an investigation, after the expiration of three years from the due date for filing a return or the date of filing, whichever is later. (Emphasis supplied.) The substance of the final sentence therein is to prohibit the department from making an assessment after the expiration of 3 years from the due date for filing a return or the date of filing, whichever is later. This prohibition or restriction would apply to all intangibles for which a return is required. Excepted from this prohibition is an assessment made pursuant to an investigation, which is covered by s. 199.232(7), F.S., which provides: An investigation may be made against a person for any year in which that person's right to a refund is available. The date a taxpayer is contacted personally by an agent of the department, or the date of a certified letter from the department to the last known address of the taxpayer, shall be the date that will govern the period subject to assessment. (Emphasis supplied.) This section allowing investigations would apply to both the annual and the nonrecurring intangible taxes. A taxpayer's right to refund is covered by ss. 199.252 and 215.26, F.S. In both sections refunds may be allowed only if proper application is made with the department and the Comptroller ". . . within three years from the date the right to such refund shall have accrued." This language was construed by the Supreme Court to mean within 3 years from the date of payment in the case of State ex rel. Victor Chemical Works v. Gay,74 So.2d 560. Thus, the department would be authorized to back assess for omitted or undervalued intangibles on which the nonrecurring intangible tax is due for the 3-year period in which the person's right to refund is available as discussed previously herein. Section 199.232(1), F.S., cannot be interpreted to grant to the department unlimited and unrestricted back assessing authority, but must be construed in connection with s. 199.232(4), (6), and (7), F.S., which contains specific limitations on the department's back assessment powers. Section 199.232(1) imposes specific duties on the department relating to assessment and collection of intangible tax on intangibles which may have escaped taxation, been omitted, or been undervalued, while s. 199.232(4) expressly restricts such power to the period covered therein and in s. 199.232(7) through reference to the statutes governing refunds. (See ss. 199.252 and 215.26, F.S., and the case of State v. Gay, supra.) The rule on seemingly inconsistent provisions in a statute is discussed in 82 C.J.S. Statutes s. 34. At p. 717 it is stated: Since it is the duty of the court to harmonize and reconcile all parts of a statute, including those that are apparently conflicting or inconsistent, so that effect may be given to each and every part, as discussed supra s. 346, conflicting intentions in the same statute are never to be supposed or so regarded, unless forced on the court by unambiguous langauge. (Emphasis supplied.) Were we to interpret s. 199.232(1), F.S., as granting to the department authority to back assess forever or for an unlimited period of time, it would be inconsistent with the recordkeeping requirement, inconsistent with the specific prohibition on back assessments beyond the 3-year periods discussed earlier herein, inconsistent with the authority to make investigations, and inconsistent with the 3-year refund periods provided for in ss. 199.252 and 215.26, F.S. Such an interpretation would allow the department to back assess forever, but not require taxpayers to maintain records which the department would need to do investigations and make back assessments. In 82 C.J.S. Statutes s. 346, beginning at p. 705, it is stated: Provided always that the interpretation is reasonable and not in conflict with the legislative intent, it is a cardinal rule of construction of statutes that force, meaning, significance, or effect must be given, if possible, and if it can fairly and reasonably be done, to the whole statute and every part, section, and provision thereof, and to all the language employed or contained therein, according to the decisions on the question, including every word, term, phrase, expression, clause, sentence, and paragraph, so that no part will become inoperative, and so as to render the statute a harmonious, consistent, and symmetrical whole. (Emphasis supplied.) Continuing at p. 712 it is stated: In other words, a statute should be so construed that no word, clause, sentence, provision, or part shall be rendered surplusage, or superfluous, meaningless, void, insignificant, or nugatory, if that result can be avoided, or unless it is not possible to give effect to every word without doing violence to the plain meaning of a word, or unless the exigencies of the situation, as presented from a consideration of the statute as a whole, imperatively demand that some word, phrase, or sentence be discarded, disregarded, rendered useless, or deprived of meaning. (Emphasis supplied.) Continuing at p. 714 it is stated: In accordance with the foregoing principles, it is the duty of the court to reconcile or harmonize, so far as is practicable, the various parts and provisions, including those that are apparently conflicting or inconsistent, so as to make them consistent, harmonious, and sensible, and not mutually destructive, and so as to enable them all to stand, and have effect, and to make the entire act, or the whole scheme, effectual. (Emphasis supplied.) Concluding at p. 717 it is stated: Just as an interpretation which gives effect to the statute will be chosen instead of one which defeats it, as discussed supra s. 323, so, an interpretation which gives effect to the entire language, or every part, will be selected or favored, as against one which does not. (Emphasis supplied.) Construing the statute as a whole as has been done herein gives effect to all parts of the statute, rendering none mutually destructive, avoids a construction which would render parts of the statute meaningless, insignificant, or nugatory and reconciles all the parts of the statute making them consistent, harmonious, and sensible.