811 So.2d 756 (2002)
CITY OF MIAMI, Appellant,
v.
QUIK CASH JEWELRY & PAWN, INC., et al., Appellees.
No. 3D00-3533.
District Court of Appeal of Florida, Third District.
March 6, 2002.
Rehearing Denied April 12, 2002.
*757 Alejandro Vilarello, City Attorney, and Myrna D. Bricker, Assistant City Attorney, for appellant.
Dennis R. Bedard, Miami, for appellees.
Before FLETCHER and SORONDO, JJ., and NESBITT, Senior Judge.
FLETCHER, Judge.
The City of Miami has appealed a final judgment declaring fees imposed by the City on pawnshop operators to be unconstitutional taxes. We reverse.
In 1996, the legislature enacted Chapter 96-242, Laws of Florida, establishing the Florida Pawnbroking Act (section 539.001-539.003, Florida Statutes) which authorized the licensing and regulating of pawnbrokers by the Florida Department of Agriculture and Consumer Services. The Act establishes strict licensing requirements, provides for detailed forms to be completed for each pawn transaction, requires strict record keeping and reporting procedures, and establishes procedures for the holding and recovering of stolen goods. As part of the record keeping process, pawnbrokers are required to deliver to the appropriate law enforcement official, on a daily basis, the original pawnbroker transaction forms for each transaction which occurred on the previous day. § 539.001(9), Fla. Stat. (1997). Failure to comply can cost a pawnbroker his/her license. § 539.001(6), Fla. Stat. (1997).
The City of Miami enacted its ordinance no. 11425, amending City Code Section 42-8: Special Departmental Services, setting forth in Section 42-8(h) administrative fees to cover the cost of police-conducted inspections of pawn shops and for processing transaction forms by the "pawn shop detail."[1] These services and others provided by the City to the pawnbrokers enable them to meet the requirements of the Act.
The trial court declared the City's pawnshop fees unconstitutional, finding them to be a tax, and not, as contended by the City, user fees. If the fees are a tax, the trial court's declaration of unconstitutionality is correct as only the Florida Legislature has the power to authorize the levy of a tax (which it has not done here). Art. VII, § 1(a), Florida Constitution; Collier County v. State, 733 So.2d 1012 (Fla. 1999); Fuchs v. Robbins, 738 So.2d 338, 347 n. 23 (Fla. 3d DCA 1998). User fees, on the other hand, can validly be imposed by a city (or county). Collier County v. State.
The trial court believed that the City's pawnshop fees are a tax (and thus unconstitutional) for two reasons. First the court concluded that the fees primarily benefit the general public (an indicium of a tax) as they are expended on city police services, including the criminal investigations made possible by the transaction reports. Next the court concluded that the City's pawnshop fees are involuntary in nature (also an indicium of a tax). That is, if a pawnshop operator fails to pay the fees, that operator will not be provided with the City's aid in meeting the Act's mandates, and the operator's required state license could be revoked.
As logical as these conclusions may seem, and we understand how the trial court could reach them, they are not correct. First, the benefit received by the *758 general public is conferred by the Act and by the Act's requirements placed on pawnshops, such as the transaction reports. Any criminal investigatory leads come from them, not from payment of the fees. The benefits from the fee payments go to the pawnshop owners, who are enabled to perform their Act-required duties (and thus be in business) as the fees support the police detail which administers the shops' transaction reports and performs other tasks caused by the pawnshops' required actions under the Act.
The trial court's second conclusion, that payment of the fees is not voluntary (as the pawnbroker will suffer the previously noted consequences of non-payment), is also in error. In National Cable Television Ass'n v. United States, 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974), the United States Supreme Court made it clear that:
"Taxation is a legislative function, and Congress, which is the sole organ for levying taxes, may act arbitrarily and disregard benefits bestowed by the Government on a taxpayer and go solely on ability to pay, based on property or income. A fee, however, is incident to a voluntary act, e.g., a request that a public agency permit an applicant to practice law or medicine or construct a house or run a broadcast station. The public agency performing those services normally may exact a fee for a grant which, presumably, bestows a benefit on the applicant, not shared by other members of society."
National Cable, at 415 U.S. at 340-41, 94 S.Ct. 1146.
Thus, National Cable reminds us, if one wishes to avoid paying the user fees therefor, one can do so by not seeking to enter the practice of law or medicine; by not constructing a house; and by not running a broadcast stationor here, by not operating a pawnshop. In other words, one can avoid a user fee by not seeking the governmental service for which it is charged.
Citing National Cable, the Florida Supreme Court confirmed its agreement with this differentiation between user fees and taxes:
"User fees are charges based upon the proprietary right of the governing body permitting the use of the instrumentality involved. Such fees share common traits that distinguish them from taxes: they are charged in exchange for a particular governmental service which benefits the party paying the fee in a manner not shared by other members of society, National Cable Television Assn. v. United States [citation omitted]; and they are paid by choice, in that the party paying the fee has the option of not utilizing the governmental service and thereby avoiding the charge."
State v. City of Port Orange, 650 So.2d 1, 3 (Fla.1994).
A tax, however, is as concisely defined in Justice Terrell's concurring opinion in State ex rel. Gulfstream Park Racing Ass'n v. Florida State Racing Comm'n, 70 So.2d 375, 379 (Fla.1953):
"In common parlance a tax is a forced charge or imposition, it operates whether we like it or not and in no sense depends on the will or contract of the one on whom it is imposed."
The Arizona Supreme Court when sorting out taxes from fees, stated:
"A tax is imposed upon the party paying it by mandate of the public authorities, without his being consulted in regard to its necessity, or having any option as to its payment. The amount is not determined by any reference to the service which he receives from the government, but by his ability to pay, based on property or income. On the other hand, a fee is always voluntary, in the sense that the party who pays it originally has, of *759 his own volition, asked a public officer to perform certain services for him, which presumably bestow upon him a benefit not shared by other members of society. We think it is clear that the payment which plaintiff is seeking to recover[2] is in no sense a tax, but is rather a fee. In the first place, the necessity of its payment does not arise unless and until the individual requests the public authority to perform some particular service. So long as the service is not asked, the money will never be demanded. In the second place, the service which is requested of the defendant is one which obviously and admittedly will confer a particular benefit on plaintiff alone, and upon no other person, natural nor artificial. We hold, therefore, that the amount in controversy was collected from plaintiff as a fee and not as a tax, and as such is not subject to the constitutional inhibitions imposed upon taxes, but rather to such as may exist as against fees."
Stewart v. Verde River Irrigation & Power Dist., 49 Ariz. 531, 534, 68 P.2d 329, 334 (1937). See also Emerson College v. City of Boston, 391 Mass. 415, 462 N.E.2d 1098, 1105 n. 16 (1984) and City of Vanceburg, Kentucky v. Federal Energy Regulatory Comm'n, 571 F.2d 630, 644 (D.C.Cir.1977), both citing National Cable's language differentiating user fees from taxes.
As the City's pawnshop fees are voluntary and benefit pawnshop owners in a manner not shared by others, they are not a tax, but are constitutional user fees. We therefore reverse the final judgment.
Reversed.
NOTES
[1] There are approximately 300 pawnshops in the city, averaging 600 transaction forms a day. On-site inspections are conducted monthly by the Pawn Shop Police Detail. In addition, the detail is "overwhelmed" with telephone calls from pawnshop operators inquiring about procedural issues, changes in the law, and reporting criminal activity and stolen property.
[2] The Arizona Court is here referring to fees for the filing and recording of a permit for the appropriation of irrigation water from the Verde River.