885 So.2d 912 (2004)
WCI COMMUNITIES, INC., a Delaware corporation, successor by merger to WCI Communities Limited Partnership, a Delaware limited partnership, Appellant,
v.
CITY OF CORAL SPRINGS, a Florida municipal corporation, Appellee.
No. 4D03-1901.
District Court of Appeal of Florida, Fourth District.
September 29, 2004.
*913 Alvin B. Davis, Thomas M. Karr and Heather L. Gatley of Steel Hector & Davis, LLP, Miami, for appellant.
Michael T. Burke and Tamara M. Scrudders of Johnson, Anselmo, Murdoch, Burke, Piper & McDuff, P.A., Fort Lauderdale, for appellee.
SHAHOOD, J.
Appellant, WCI Communities, Inc. (WCI), a Delaware corporation, successor by merger to WCI Communities Limited Partnership, a Delaware limited partnership, appeals from Final Judgment entered in favor of appellee, City of Coral Springs (City).
WCI filed its initial complaint against the City seeking declaratory and injunctive relief. Thereafter, it filed a Supplemental Complaint asserting that the nine-month temporary moratorium enacted by the City on the processing of site plan applications for townhouse and multi-family development constituted procedural and substantive due process violations pursuant to 42 U.S.C. § 1983.
WCI claimed that the moratorium prevented WCI from using its multi-family parcels for multi-family residential development thereby preventing it from selling these parcels to others for such development. WCI alleged that these actions by the City disrupted and interfered with its business operations, harmed its goodwill and reputation and created uncertainty regarding its continued viability.
WCI alleged that during 1996 and 1997, WCI had a reasonable expectation of selling its multi-family properties to customers and that its properties were properly planned, zoned, and platted to meet all existing City requirements. It claimed that the City had knowledge that its moratorium would cause WCI damage. Based on allegations from the First Amended Complaint, WCI alleged that the City knew that WCI projected sales of its multi-family property in its financial plan necessary to meet its financial commitments to its lenders and investors so as to avoid default of its loan obligations and that the City's actions prevented WCI from meeting its financial commitments. Further, the City's actions caused WCI to lose its ability to market and sell its multi-family parcels, and thus, lost "the time/ value of *914 money it could have received by earlier sale" of its property.
WCI further alleged that the temporary moratorium effected a regulatory taking of its property requiring payment of just compensation. Specifically, WCI claimed that the regulations enacted by the City were unnecessary and had a negative impact upon its properties. Following a five-day non-jury trial, the trial court entered a detailed final judgment finding in favor of the City.
We hold the trial court did not err in its final judgment which found that that the city's use of zoning in progress and its adoption of a temporary moratorium in the processing of multi-family development applications did not deprive WCI of any substantive due process rights or affect a temporary taking of WCI's multi-family zoned parcels.
On the issue of substantive due process, courts have held that "[s]ubstantive due process challenges are analyzed under the rational basis test; that is, a legislative act of the government will not be considered arbitrary and capricious if it has `a rational relationship with a legitimate general welfare concern.'" Gardens Country Club, Inc. v. Palm Beach County, 712 So.2d 398, 404 (Fla. 4th DCA 1998).
Under both substantive due process and equal protection, when the legislation being challenged does not target a protected class, the rational basis test is applied. See Restigouche, Inc. v. Jupiter, 59 F.3d 1208, 1214 n. 6 (11th Cir.1995); see also 219 S. Atl. Blvd., Inc. v. City of Ft. Lauderdale, Fla., 239 F.Supp.2d 1265, 1276 (S.D.Fla.2002). Substantive due process challenges to zoning regulations are analyzed under the rational basis test. See Restigouche, 59 F.3d at 1214. Under this test, a court gives great deference to economic and social legislation. See Gary v. City of Warner Robins, Ga., 311 F.3d 1334, 1339 (11th Cir.2002). The first step in determining whether legislation survives the rational basis test is identifying a legitimate government purpose which the governing body could have been pursuing. See Restigouche, 59 F.3d at 1214. The second step of the rational basis test asks whether a rational basis exists for the enacting government body to believe that the legislation would further the hypothesized purpose. See id. The proper inquiry is concerned with the existence of a conceivably rational basis, not whether that basis is actually considered by the legislative body. See id. The rational basis standard is highly deferential. See Gary, 311 F.3d at 1339.
A court should not set aside the determination of public officers in land use matters unless it is clear that their action has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense. See Smithfield Concerned Citizens for Fair Zoning v. Town of Smithfield, 907 F.2d 239, 243 (1st Cir.1990). The question is only whether a rational relationship exists between the ordinance and a conceivable legitimate governmental objective. See id. at 245. If the question is at least debatable, there is no substantive due process violation. See FM Props. Operating Co. v. City of Austin, 93 F.3d 167, 174 (5th Cir.1996).
In this case, the trial court, in its final judgment, set out the bases upon which the court must determine whether there was such a deprivation of rights. In its detailed judgment, the court determined that the stated purpose of Ordinance 97-112, establishing the moratorium on multi-family development, stated a clear, legitimate government purpose. *915 The ordinance provided in pertinent part the following language:
Purpose: To enable the city to undertake a thorough analysis of the Comprehensive Plan and the residential development regulations for RC & RM zoning districts including, but not limited to the impact of said development on parks, recreation and open space, the availability of infrastructure and accessibility of emergency and public service vehicular traffic and public safety and public facilities.
WHEREAS, the City Commission of the City of Coral Springs has noted the rapid development of multiple-family residential units and the consequential growing demands upon city services; and
WHEREAS, although the City Commission has incorporated numerous changes to the development regulations within the past few years which impact townhouse and multiple-family residential development, a comprehensive review is required to study the impact of townhouse and multiple-family development on transportation, public safety, adequacy of public facilities; recreation and open space, the accessibility for emergency and public service vehicular traffic, the adequacy of drainage facilities, and the impact on the availability of water and wastewater facilities; and
WHEREAS, the city requires time to review, consider, modify, process for adoption, and implement regulations pertaining the referenced zoning districts, and to evaluate the extent that the existing zoning laws are effectively implementing the comprehensive plan;....
The trial court held that based on the evidence adduced at trial, the City's actions were based on its discovery that WCI was operating differently than its predecessor, Coral Ridge Properties, and that unlike site plans submitted by Coral Ridge Properties, site plans being submitted by WCI for multi-family parcels were at the very minimum of code requirements. In an effort to obtain better quality housing, the City began exploring regulatory action to replace what Coral Ridge Properties had previously done with enforcing deed restrictions. The court held that the temporary moratorium was an important land-use planning tool as a means of preserving the status quo during the planning process to ensure that the community's problems were not exacerbated during the time it takes to formulate a regulatory scheme. As such, there was a rational logical nexus between the City's conduct in adopting the regulations and the moratorium, and legitimate governmental objectives.
It is well-settled that permissible bases for land use restrictions include concern about the effect of the proposed development on traffic, on congestion, on surrounding property values, on demand for city services, and on other aspects of the general welfare. See Corn v. City of Lauderdale Lakes, 997 F.2d 1369, 1375 (11th Cir.1993). It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled. See id.
In this case, the City undertook a comprehensive review of its regulations, and during the moratorium period, enacted changes pertaining to multi-family development relating to setbacks, building length, parking, utilities, sidewalks, right-of-way width, landscaping and other concerns. The City was entitled to enact the moratorium as a land-use tool to promote effective planning and preserve the status quo during this change. See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning *916 Agency, 535 U.S. 302, 337, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002) (temporary moratoria are used widely among land-use planners to preserve the status quo while formulating a more permanent development strategy). By using this planning tool, the City prevented development inconsistent with its pending changes in development regulation. An emergency is not required to justify the use of this tool. Clearly, such a moratoria constituted a legitimate governmental purpose.
We affirm as to all other issues raised without further discussion.
AFFIRMED.
POLEN and MAY, JJ., concur.