921 So.2d 661 (2006)
Theresa Marie GARGANO, Appellant,
v.
LEE COUNTY BOARD OF COUNTY COMMISSIONERS, Appellee.
No. 2D04-4799.
District Court of Appeal of Florida, Second District.
January 20, 2006.
*663 Ralf G. Brookes, Cape Coral, for Appellant.
Robert W. Gray, County Attorney, and John J. Renner, Chief Assistant County Attorney, Fort Myers, for Appellee.
ALTENBERND, Judge.
Theresa Marie Gargano appeals an order dismissing her third amended complaint with prejudice. Ms. Gargano's complaint primarily argues that Lee County has failed to adequately maintain the Sanibel Bridge despite receiving ample bridge toll revenue for that purpose. As a portion of her complaint, Ms. Gargano seeks damages and injunctive relief, arguing that the toll for the Sanibel Bridge is an unconstitutional tax and is unreasonable and that the bridge's disrepair has resulted in increased garbage fees. The complaint also attempts to allege a class action.
The trial court dismissed this lawsuit with prejudice for three alternative reasons. It concluded that it lacked subject matter jurisdiction, that Ms. Gargano lacked standing to bring the action, and that the complaint failed to state a cause of action. We conclude that the trial court did have jurisdiction and that Ms. Gargano, as a resident of Sanibel Island, had standing to bring a claim. We agree with the trial court, however, that the third amended complaint is disorganized and deficient. It contains theories that do not state a cause of action, do not authorize the requested remedy, and are not justiciable. On the other hand, we cannot hold that Ms. Gargano's pleading is incapable of amendment to state a claim at least for declaratory relief or injunctive relief concerning the reasonableness of the toll. Although this may be a Pyrrhic victory for Ms. Gargano, we conclude that she should be permitted one additional opportunity to allege a proper claim.[1]

I. THE SANIBEL BRIDGE CONTROVERSY
In the early 1960s, Lee County issued bridge and causeway revenue bonds and built a bridge and causeway between the mainland of Lee County and Sanibel Island. *664 See Sanibel-Captiva Taxpayers' Ass'n v. Lee County, 132 So.2d 334 (Fla. 1961). The bridge is the only roadway providing access to Sanibel Island and Captiva Island. The County has always charged a toll for use of this facility. The record reflects that the toll for the bridge was set at $3 in 1963 and was never increased or decreased during the following forty years. From an economic perspective, the bridge is a monopoly without any significant competitors. There is no dispute that it has long generated revenues in excess of its basic operating expenses.
Because this action was dismissed on the pleadings, we have limited factual information in the record. It is obvious, however, that as the bridge has aged, a public debate has evolved concerning its maintenance, upgrading, and replacement. Ms. Gargano's complaint alleges that the bridge is no longer adequate to handle larger vehicles, which has made it more difficult and expensive to transport construction materials to the islands and to remove solid waste from the islands. This difficulty has resulted in a garbage surcharge for residents of Sanibel Island.
From discussions at oral argument, this court is generally aware that a lot of water has gone under the bridge since this lawsuit was filed. The County increased the toll in 2005. Decisions have been made concerning replacement of the bridge. These changes may have rendered portions of this lawsuit moot, but they have not rendered moot the issues that we address.

II. THE PLEADINGS
Ms. Gargano and Save Our Bay, Inc., filed this lawsuit against Lee County in January 2004. The record reflects that another, similar lawsuit was filed by the City of Sanibel at the same time, but the lawsuits do not appear to have been consolidated. Ms. Gargano amended her complaint and ultimately filed a third amended complaint in August 2004. Save Our Bay, Inc., is not a party to the third amended complaint.
In the third amended complaint, Ms. Gargano alleges that she lives on Sanibel Island and that she has no access to her home from the mainland except by way of the Sanibel Bridge. She does not allege how long she has lived on Sanibel Island or the amount of the toll when she purchased her property. We assume, however, that the toll for a standard automobile had already been set at $3 when she moved to the island.
The third amended complaint is not a model pleading. The first forty-two paragraphs are not labeled as a separate count and do not conclude with a request for relief. Nevertheless, a heading preceding paragraph 43 states, "Count II. Garbage Surcharge," and the pleading then realleges the prior forty-two paragraphs. Paragraphs 48 through 58 contain class action allegations, describing two classes. Apparently, the first forty-two paragraphs, which generally discuss the gross and net profitability of the bridge between 1977 and 2003 and the limited expenditures on maintenance and repair, are intended as a count alleging a claim for "tolls," and count II is a claim for garbage surcharges. The two proposed classes involve people who have paid these two charges.
The third amended complaint concludes with a request for relief. It asks the court to (1) declare "the excessive and unreasonable toll to be an illegal, unconstitutional tax," (2) require the County to immediately spend "surplus funds collected on the bridge to remedy, repair the bridge," (3) enjoin future unreasonable tolls, (4) order the County to either repay the plaintiffs any "surplus" toll revenue or spend that money on emergency repairs to the bridge, *665 (5) award damages to plaintiffs who paid the garbage surcharge, and (6) award attorneys' fees to the plaintiff's lawyer.
As explained earlier, the trial court dismissed the third amended complaint with prejudice, ruling in the alternative that the court lacked subject matter jurisdiction, that Ms. Gargano lacked standing to bring the lawsuit, and that the complaint failed to allege a cause of action.

III. SUBJECT MATTER JURISDICTION
The trial court decided that it had no jurisdictional authority to review the political decisions of the Lee County Commission, which set the toll for the Sanibel Bridge and decided how best to maintain it. We conclude that the trial court's jurisdiction was very limited, but that it did have jurisdiction.
Article V, section 5(b), of the Florida Constitution provides most of the common jurisdictional authority of the circuit courts. It does not appear to provide express jurisdiction to review the toll and bridge maintenance decisions of the Lee County Commission in this case. However, article V was substantially revised in 1972. Prior to the revision, the Florida Constitution had long contained a provision giving the circuit courts jurisdiction to review "the legality of any tax, assessment, or toll." See art. V, § 6(3), Fla. Const. (1968); see also art. VI, § 8, Fla. Const. (1868); art. V, § 6(3), Fla. Const. (1885).
When article V was revised in 1972, section 20 was created as "Schedule to Article V," primarily to prevent gaps in jurisdiction during the major transitions in jurisdiction required by the amendments to article V. Section 20(c)(3) to article V contains the jurisdictional provision preserving circuit court jurisdiction over the legality of tolls.
Section 20(i) gives the legislature authority to delete "obsolete" items from this schedule. However, the parties have found no statute or legislative resolution that ever deleted as obsolete the provision in section 20 that gives circuit courts jurisdiction over the legality of tolls. Instead, the legislature affirmatively enacted section 26.012(2)(e), which expressly gives the circuit court jurisdiction "in all cases involving [the] legality [of] any tax assessment or toll." See § 26.012(2)(e), Fla. Stat. (2004); ch. 72-404, § 3, Laws of Fla. Thus, to the extent that Ms. Gargano challenges the legality of a toll, we conclude that the trial court erred in ruling that it lacked subject matter jurisdiction.[2]
Although the circuit court has jurisdiction to resolve the "legality" of the Sanibel Bridge toll, there is little statutory or case law to assist the court in this task. Section 338.165, Florida Statutes (2004), authorizes a county to continue to collect tolls on a revenue-producing project after the discharge of any bond indebtedness related to the project and requires revenues to be first used to pay the costs of operation, maintenance, and improvement of the toll project, but it provides no guidelines for the establishment of reasonable tolls or for judicial review of the reasonableness of tolls.
Most public utilities have rates that are the subject of extensive statutory regulation. See, e.g., ch. 364, Fla. Stat. (2004) (regulating telecommunications companies). No similar chapter exists for toll roads or bridges. Although early toll *666 bridges and roads in Florida were often owned by private companies,[3] most have long been owned by the government with rates established by bodies subject to the political process. If circuit courts are to have the authority to monitor the legality of tolls set by political bodies, it might be helpful if the legislature provided some statutory guidelines.
In the absence of statute, there is some case law providing a little guidance to the trial court. In Masters v. Duval County, 114 Fla. 205, 154 So. 172, 174 (1934), the court ruled that circuit courts have "exclusive original jurisdiction" of such cases and emphasized that tolls are not generally regarded as taxes. The court further held that uniform bridge tolls are not illegal. The case, however, did not involve a claim that the toll was unjust or unreasonable.
In Miami Bridge Co. v. Miami Beach Railway Co., 152 Fla. 458, 12 So.2d 438, 445-46 (1943), the court held that the judicial power was limited to reviewing "existing rates" and that the circuit court had no authority to set a rate. Thus, the court can strike down a rate, but it cannot impose some other rate. The court, however, further held that a circuit court could suggest a maximum reasonable rate to the owner of the bridge and then enjoin the owner if it did not promptly establish a reasonable rate. Id. at 446; see also Miami Bridge Co. v. R.R. Comm'n, 155 Fla. 366, 20 So.2d 356 (1944).
From the limited case law, one issue seems clear: "legality" incorporates the concept of a reasonable rate. Thus, in evaluating the legality of a toll, the circuit court is empowered to review its reasonableness. The case law at least implies that a reasonable rate would consider not only the annual cost of operation and maintenance, but also the need for a fair return on investment and the need to set aside funds to replace the bridge when it becomes old or obsolete. Section 338.165 would suggest that tolls might be reasonable if used to further improve related roadways. See § 338.165(4), Fla. Stat. (2004); see also McGovern v. Lee County, 346 So.2d 58 (Fla.1977). One would assume that a court would be obligated to give considerable deference to the decision of the political body setting the rate, but if a rate were so high as to be confiscatory, it would certainly be unreasonable.
We recognize that we provide little guidance to the trial court on the issue of reasonableness, but on remand it will have considerable flexibility to establish appropriate guidelines.

IV. STANDING
If the circuit court has constitutional and statutory jurisdiction to review the reasonableness of tolls, then someone must have standing to challenge the toll. Ms. Gargano owns property and resides on Sanibel Island. She must pay the toll to reach her home from the mainland. If she does not have standing, we are hardpressed to think of a party who would have standing. Ms. Gargano appears to be on equal footing to the Miami Beach Railway Company in the Miami Beach Railway case. 152 Fla. 458, 12 So.2d 438.
Generally, in order to have standing to bring an action against a public entity, a plaintiff must allege that she has suffered or will suffer a special injury. See Rickman v. Whitehurst, 73 Fla. 152, 74 So. 205, 207 (1917); Godheim v. City of Tampa, 426 So.2d 1084, 1086-88 (Fla. 2d DCA 1983); Alachua County v. Scharps, 855 So.2d 195, 198 (Fla. 1st DCA 2003). *667 Ms. Gargano has alleged a special injury as a resident of the island.
We are inclined to believe that the trial court was focusing upon Ms. Gargano's standing to challenge the County's decisions about maintenance and repair of the bridge when it found she lacked standing to bring her claim. As we explain later, she has no right to challenge those political decisions. However, for the limited purpose of challenging the reasonableness of the toll, Ms. Gargano has standing.

V. INJUNCTION TO COMPEL REPAIR
The toll for this bridge has been $3 for a long time. If that toll was not challenged in the 1960s when the minimum wage was $1 and gas cost 25¢ per gallon, it is likely that Ms. Gargano faces an uphill battle to establish that the $3 toll was unreasonable in 2004. It would appear that Ms. Gargano's primary purpose in filing this lawsuit was to obtain a judgment forcing the Lee County Commission to take steps to maintain and repair the bridge. She has alleged no theory that would give her the right to compel this political body to take such steps.
It is well established that decisions concerning the maintenance of and need to construct roadways, bridges, and other similar services are political questions outside the purview of the courts. See, e.g., Partridge v. St. Lucie County, 539 So.2d 472 (Fla.1989). Even in the context of tort law, Florida has never recognized a duty, much less waived sovereign immunity, concerning such decisions. See Trianon Park Condo. Ass'n v. City of Hialeah, 468 So.2d 912 (Fla.1985). Accordingly, although we reverse the order of dismissal in this case, we agree with the trial court that the third amended complaint did not state a cause of action entitling Ms. Gargano or any other resident of Sanibel Island to any judicial review of the County Commission's decisions regarding maintenance and repair of the Sanibel Bridge.

VI. GARBAGE SURCHARGE
Just as Ms. Gargano has no entitlement to have the circuit court order the County to improve the maintenance of the Sanibel Bridge, she has no claim for damages arising from the garbage surcharge that allegedly is the result of poor maintenance. It is not clear from the pleadings whether the garbage surcharge is imposed by Lee County or the City of Sanibel, but in any event, there is no allegation that it is an unconstitutional tax. Instead, Ms. Gargano seems to perceive the garbage surcharge as a damage proximately caused by the negligent maintenance of the bridge. As explained in the preceding section, she simply has no theory in tort to recover such damages against a governmental agency.

VII. THE BRIDGE TOLL IS A USER FEE AND NOT A TAX
In her complaint and in the briefing, Ms. Gargano argues extensively that the toll is an unconstitutional tax and not a valid user fee. Because we hold that the circuit court has jurisdiction to review the reasonableness of the toll, it may not be necessary to determine whether the toll could be classified as a tax. On the other hand, we are concerned that the remedies may vary depending upon whether the toll is treated as a tax or a user fee.
We note that the supreme court has twice reviewed this toll and has never treated it as a tax. See McGovern, 346 So.2d 58; Sanibel-Captiva Taxpayers' Ass'n, 132 So.2d 334. As the supreme court explained in State v. City of Port Orange, 650 So.2d 1, 3 (Fla.1994):
User fees are charges based upon the proprietary right of the governing body permitting the use of the instrumentality involved. Such fees share common *668 traits that distinguish them from taxes: they are charged in exchange for a particular governmental service which benefits the party paying the fee in a manner not shared by other members of society, National Cable Television Assn. v. United States, 415 U.S. 336, 341, 94 S.Ct. 1146, 1149, 39 L.Ed.2d 370 (1974); and they are paid by choice, in that the party paying the fee has the option of not utilizing the governmental service and thereby avoiding the charge. Emerson College v. City of Boston, 391 Mass. 415, 462 N.E.2d 1098, 1105 (1984) (citing City of Vanceburg v. Federal Energy Regulatory Comm'n, 571 F.2d 630, 644 n. 48 (D.C.Cir.1977), cert. denied, 439 U.S. 818, 99 S.Ct. 79, 58 L.Ed.2d 108 (1978)). The above concept of user fees was approved by this Court in City of Daytona Beach Shores v. State, 483 So.2d 405 (Fla.1985). The City's transportation utility fee falls within our definition of a tax, not our definition of a user fee.
Ms. Gargano argues that the bridge toll is really a tax because she does not pay it "by choice." It is true that anyone who lives on Sanibel Island or Captiva Island and does not own a boat or helicopter must pay this toll to reach their home from the mainland. This is not a situation in which the traveler has other, longer roadways to reach the same location. However, the concept of "choice" for defining user fees is designed to distinguish a tax whose payment can be compelled from charges for services that one can avoid. Ms. Gargano can live elsewhere in Lee County. She can choose to stay on the island and not visit the mainland. The County cannot compel her to use the bridge or pay the fee. As a practical matter, she may not see many available options, but as a legal matter this charge is not a tax.[4]See Masters, 154 So. at 174.

VIII. THE LIMITED REMEDY FOR AN UNREASONABLE TOLL
Ms. Gargano seeks to achieve class action status for her lawsuit in part to obtain refunds of tolls paid in the past. As we read the Miami Beach Railway case, the supreme court did not authorize such relief. The court is only entitled to enter a prospective injunction declaring the current fee unreasonable and to make recommendations regarding what it would consider a maximum reasonable rate. Just as the circuit court cannot set a reasonable fee for the future, it cannot determine a reasonable fee for the past and then order the difference returned to persons who used the bridge.
Especially if user fees must generally be uniform, it is not clear to this court why a class action would be necessary to impose an injunction against Lee County that invalidated a toll for all future users of the bridge. Thus, while we do not prohibit Ms. Gargano from attempting to allege a class action on remand, it is not clear to this court on the basis of the current pleadings that such an action is actually necessary.
Reversed and remanded for further proceedings consistent herewith.
CASANUEVA and LaROSE, JJ., Concur.
NOTES
[1] This case was orally argued by the parties on May 6, 2005. The delay in the release of this opinion is solely the responsibility of the author, who found the opinion difficult to write and, thus, delayed the release of the opinion.
[2] Until this case, this court had believed that all provisions in section 20 of article V had long ago been declared obsolete. It would be a useful venture for some student of the law to analyze all portions of section 20 to determine what provisions continue to have vitality.
[3] For example, the Gandy Bridge in Tampa Bay was originally built by George S. Gandy and opened in 1924. Charlton W. Tebeau, A History of Florida 379 (U. Miami Press 7th ed. 1980). It later became a government-owned bridge without a toll.
[4] Many user fees are similar in that a true choice does not exist. One cannot realistically choose to forego water or sewer service to a home or avoid user fees for garbage pickup. Even in areas with designated water for lawn irrigation, the choice to forego the service may result in the death of one's yard. These realities do not transform the charges for these services into taxes.